11IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRENDA S. TRAMMELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-146-FHS-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Brenda S. Trammell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 27, 1963 and was forty-six years old at the time of the administrative hearing (Tr. 24, 76). She completed her GED (Tr. 115), and has worked as sewing machine operator, informal waitress, display merchandiser, stock supervisor, and display manager (Tr. 34-35, 112). The claimant alleges that she has been unable to work since December 1, 2007 due to deep vein thrombosis ("DVT"), postphlebitic syndrome, thyroid abnormalities, protein S deficiency, obesity, depression, and anxiety (Tr. 111, 131).

## Procedural History

On December 21, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 76-80). Her application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 25, 2009 (Tr. 8-15). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a), *i. e.*, she could lift/carry ten pounds occasionally and frequently lift/carry up to ten pounds, stand/walk two hours in

an eight-hour workday, and sit six hours of an eight-hour workday (Tr. 11).  The ALJ concluded that although the claimant could not return to any past work, she *was not* disabled prior to December 1, 2007, according to "the grids," *i. e.*, Medical-Vocational Rules §§ 201.28 and 201.21 (Tr. 14-15).

## Review

The claimant contends that the ALJ erred by failing to properly (i) evaluate the medical opinions of her treating physicians, (ii) assess her RFC, and (iii) assess her credibility.  The undersigned Magistrate Judge finds that the ALJ *did* fail to properly evaluate the medical opinions of the claimant's treating physicians, and the decision of the Commissioner should therefore be reversed.

The record reveals that the claimant's severe impairments included status post left lower extremity deep vein thrombosis, postphlebetic syndrome, protein S deficiency, and obesity (Tr. 10).  Dr. Tom Osborne began treating the claimant in July 2007 for abdominal pain and left leg pain, and admitted her to the hospital for these symptoms when they persisted. (Tr. 202).  He diagnosed the claimant with pelvic inflammatory disease and deep vein thrombosis in the left leg.  (*Id.*)  Throughout the fall of 2007, Dr. Osborne ordered frequent testing as to her blood clotting issues.  On October 25, the claimant was released to work but stopped working within two weeks due to pain and swelling in her left leg (Tr. 172, 186).  Dr. Osborne also referred the claimant to Dr. Keith Kassabian, a cardiologist.  On December 17, 2007, Dr. Kassabian noted the claimant's DVT and protein S deficiency, and that the claimant had been experiencing "continued problems with intermittent pain and swelling of the left leg" for five months.

He advised her that "there might not be anything more that can be done about this and [her] symptoms may or may not get better over time." (Tr. 161-62).

In March 2008 (three months later), a non-examining state agency physician reviewed the claimant's record and concluded that the claimant could walk up to five hours a day, but could not stand more than 30 minutes at a time, and no more than two hours in an 8-hour workday. (Tr. 232-33). On April 16, 2008, Drs. Kassabian and Osborne both completed "Physical Capacities Evaluations." (Tr. 244-47). Dr. Osborne reported that the claimant could sit two hours in an 8-hour workday and stand/walk zero hours in an 8-hour workday; that she could occasionally lift/carry up to ten pounds; that she could not bend, squat, crawl, climb, or perform activities involving unprotected heights, moving machinery, exposure to marked changes in temperature and humidity, driving automotive equipment, or exposure to dust, fumes, or gases. (Tr. 244-45). He also indicated that additional treatment would not improve the claimant's functional ability, and that—based on his examination and assessment—she could perform none of the levels of physical activity, *i. e.*, sedentary, light, etc. (Tr. 245). Dr. Kassabian made a similar assessment, and reached the same conclusion. (Tr. 246-47). In June 2008, another non-examining state agency physician reviewed the claimant's record. This physician reached the same conclusion as the earlier non-examining state agency physician, finding that the medical evidence of record did not "indicate limitations that would limit[] claimant's lifting to 10lbs." (Tr. 255). Dr. Kassabian completed another Medical Source Statement on September 1, 2009. He stated that the claimant could sit/stand/walk up to 30 minutes at a time, sit up to three hours in an 8-hour workday and

--5--

stand/walk up to 30 minutes in an 8-hour workday, and that she could occasionally lift/carry up to ten pounds and only occasionally bend/reach. He also remarked that the claimant was "at high risk for recurrent DVTs if she has to sit for any significant length of time." (Tr. 259).

Medical opinions from a treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to which they are entitled by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *See Langley v. Barnhart*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-01 [quotations marks omitted], *citing Drapeau v. Massanari*,

255 F.3d 1211, 1213 (10th Cir. 2001).  If the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight," *id.* at 1300 [quotation omitted].

The ALJ summarized the claimant's testimony and written statements and noted an X-ray of the left leg and a myocardial perfusion scan.  He mentioned the conclusions by Dr. Kassabian and Dr. Osborne that the claimant could not perform even sedentary work, but did not otherwise discuss their medical source statements or treatment records.  The ALJ observed that a claimant's RFC is an issue reserved to the Commissioner, then concluded that, "[w]hile the undersigned has carefully considered Drs. Kassabian and Osborne's opinions, they cannot be given controlling weight because it is in conflict with their own treatment records and inconsistent with the other substantial evidence as noted above."  (Tr. 13-14).

Although the ALJ was not required to give controlling weight to any opinions that the claimant was unable to perform sedentary work, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians.  Dr. Kassabian and Dr. Osborne expressed such opinions in their medical source statements, and while the ALJ rejected them as inconsistent with other medical evidence, the ALJ failed to specify the inconsistencies to which he was referring.  *See, e. g., Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of

record, but he fails to explain what those inconsistencies are.") [quotation marks and citations omitted]; *Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300.  In any event, even if the opinions expressed by Dr. Kassabian and Dr. Osborne *were not* entitled to controlling weight, the ALJ should have determined the proper weight to give them by applying all of the factors in 20 C.F.R. § 404.1527. *See Langley*, 373 F.3d at 1119.  *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") [quotation omitted].  *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review.  Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. . . . The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions.  Nothing more was required in this case.").  The ALJ failed to perform the proper analysis here

   Accordingly, the Commissioner's decision should be reversed and the case should be remanded to the ALJ for further analysis of the opinions of the claimant's treating

physicians. On remand, the ALJ should properly analyze *all* of the medical opinions, re-determine whether the claimant has any severe impairments, and if so, determine her RFC and the work she can perform (if any) and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 13th day of September, 2011.

*[signature]*
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma